William P. Burrell and Billie Joe Burrell v. Commissioner. Engine Rebuilders, Inc. v. Commissioner.
Burrell v. Commissioner
Docket Nos. 2386-66, 3221-66.
United States Tax Court
T.C. Memo 1967-160; 1967 Tax Ct. Memo LEXIS 98; 26 T.C.M. (CCH) 748; T.C.M. (RIA) 67160; August 3, 1967
*98 Gene F. Reardon, 2150 First National Bank Bldg., Denver, Colo., for the petitioners. Richard J. Shipley, for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $5,912.09 in income tax of the Burrells and an addition to tax of $295.60 under Section 6653(a) for negligence for 1962, and deficiencies in income tax of Engine Rebuilders, Inc., of $2,128.70 and $1,559.94 for its fiscal years ended October 31, 1963 and 1964. The Burrells allege that the Commissioner erred in (1) determining $10,899.27 representing "Customer Core Deposits" was income, or, if income, was not a bad debt for 1962, (2) decreasing opening inventory by $9,000, and (3) determining the $295.60 addition to tax. Engine Builders, Inc., allege that the Commissioner erred in (1) determining that $12,212 for the year ended October 31, 1963 and $8,818.50 for the year ended October 31, 1964, representing "Customer Core Deposits," should be included in income or, if income, in failing to allow bad debt deductions of those amounts, and (2) disallowing deductions for auditing and legal expenses of $275 for the fiscal year ended October 31, 1963 and *99 $145 for the fiscal year ended October 31, 1964. Findings of Fact The Burrells are husband and wife who lived in Lakewood, Colorado when they filed their joint return for 1962 with the director of internal revenue for the district of Denver, Colorado. Engine Rebuilders, Inc., is a Colorado corporation incorporated on November 1, 1962. Its principal place of business was in Denver when it filed its returns for the two tax years with the director of internal revenue for the district of Denver, Colorado. Both petitioners used an accrual method of accounting and reporting income. William P. Burrell, as sole proprietor, was engaged in 1962 in reboring automobile motor blocks, called cores, and using them to rebuild automobile engines which he then sold to both retail and wholesale customers. Burrell wanted each customer, to which he sold a rebored core, to deliver to him the old core which the rebored core replaced or one of the same make of automobile as the rebored block which he sold to that customer. The bills which he rendered to his customers were in a total amount which was actually made up of the charge for the rebored block delivered to the customer and an amount representing *100 a reboreable old block of the same make of automobile to be delivered by the customer, but it did not show these two separate amounts. An invoice separately furnished the customer showed both the amount of the charge for the rebored core and the charge made against delivery of an old reboreable block which, if delivered to Burrell, would cancel that charge. Most customers paid only the charge for the rebored block upon receipt of the bill. The wholesale business of Burrell was taken over by Engine Rebuilders, Inc., upon its incorporation and it engaged in that business during its two tax years involved herein. It used the same invoice and billing procedures as Burrell used. Burrell's charges against customers representing the amount each would have to pay in cash if he did not deliver an old reboreable core to Burrell were carried in an account referred to herein as "Customer Core Deposits." The total amount shown in that account on October 31, 1962 when it was transferred to Engine Rebuilders, Inc., was $10,899.27. There were increases in this account of $12,212 during Engine's first fiscal year and $8,818.50 during its second year. The Commissioner, in determining the deficiency *101 against Burrell, added to reported income the $10,899.27 shown in the "Customer Core Deposits" account and, in determining the deficiencies against Engine, added to reported income $12,212 for the first year, representing the balance in the "Customers Core Account" as of October 31, 1963 less the $10,899.27 added to Burrell's income, and $8,818.50 representing the additions to the account during Engine's second year. It is stipulated that: On July 7, 1962 petitioner William P. Burrell and the Internal Revenue Service executed a collateral agreement, a copy of which is attached hereto as Exhibit 1, in which the parties agreed "That for the purpose of computing income taxes of the taxpayer for the year 1962, the inventory as of January 1, 1962 shall be $250.00." As a result of this agreement the opening inventory for the year 1962 is $250.00. Burrell did not tell the person or persons who made out his joint return for 1962 of the above agreement. The Burrell's joint return for 1962 showed $9,250 as the opening inventory of Burrell's reboring business. The Commissioner, in determining the deficiency for 1962 against the Burrells, decreased that opening inventory by $9,000 to the *102 $250 as stipulated, thus increasing reported income by $9,000 and he added $295.60 to their tax under section 6653(a). On its income tax return for the fiscal year ended October 31, 1963 Engine Rebuilders, Inc., claimed a deduction for auditing and legal expense in the amount of $410. Included in this figure is a payment made December 14, 1962 in the amount of $275 to Harry S. Bernstein, attorney at law. In the notice of deficiency respondent has disallowed the deduction claimed for this amount of $275 on the grounds that the payment was for an organization expense which is a capital expenditure. On its income tax return for the fiscal year ended October 31, 1964 Engine Rebuilders, Inc., claimed a deduction for auditing and legal expense in the amount of $395. This deduction was claimed for a payment in the amount of $395 on June 6, 1964 to Harry S. Bernstein, certified public accountant. Respondent has disallowed $145 of this amount on the ground that it represents payment of a personal expense of William P. Burrell rather than an expense of Engine Rebuilders, Inc. Opinion MURDOCK, Judge: The petitioners have the burden of proof to show that the Commissioner erred as claimed *103 in the petitions. They have failed to sustain that burden with respect to any of their assignments of error. One of the amounts billed a customer was either to be paid in cash or charged off if the customer would later deliver an old reboreable core. These charges in the Customer Code Deposit account represented accruable income either in the dollar amount charged or in the value of the core delivered in lieu thereof. The value of any core thus received by the petitioners could be charged later as cost of goods sold if the core was ever rebored for a subsequent customer. The petitioners have not proven that they reported as income any of the charges they made against customers for the delivery of an old reboreable core or any amount as the value of an old reboreable core which was delivered against such a charge. The only issue on this point is whether any amounts in this account have not been but should be included in income. There is testimony that no income was reported from these sources. The evidence does not show that the Commissioner erred in the amounts which he included in income from the "Customer Core Deposit" records. The evidence does not show that any amount should *104 be deducted as a bad debt in this connection. Burrell, in a compromise tax agreement with the Commissioner, agreed that his opening inventory for 1962 should be $250. Burrell never advised the person who made up his return that there was such an agreement. The agreement was ignored in making up the return and opening inventory was reported on the return as $9,250. Burrell's counsel tries to avoid the purpose of the compromise agreement and the stipulation by claiming that if $9,000 comes out of opening inventory it must be deducted from income in some other way. The action of the Commissioner is in accordance with the agreement and the stipulation and may not be avoided. Burrell was negligent in failing to report only $250 as his opening inventory as he had agreed to report it. Bernstein testified that the $275 paid to him by Engine in its first fiscal year represented $150 for legal work in incorporating Engine and $125 for setting up the original books of Engine. Both are clearly capital expenditures. He did not testify in regard to the $145 paid to him by Engine in its second fiscal year which the Commissioner disallowed as a deduction. These issues are decided for the Commissioner. *105 Decisions will be entered for the Commissioner.